**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF WEST VIRGINIA**
**CLARKSBURG**

**MICHAEL JACKSON, on behalf of himself**
**and all others similarly situated,**

      **Plaintiff,**

**v.**                                  **CIVIL ACTION NO. 1:24-CV-80**
                                           **Honorable Thomas Kleeh, Judge**

**WHITEPAGES, INC.,**

      **Defendant.**

**MEMORANDUM OF LAW IN SUPPORT OF**
**DEFENDANT'S MOTION TO DISMISS**

      **NOW COMES** the Defendant, Whitepages, Inc., by counsel, Natalie C. Schaefer, Caleb B. David, and Shuman McCuskey Slicer PLLC, and submits this Memorandum of Law in Support of Defendant's Motion to Dismiss. In support of its Motion, Defendant states as follows:

**INTRODUCTION AND STATEMENT OF FACTS**

      This case arises out of the alleged disclosure of Plaintiff's home address and telephone number on Defendant's website. Plaintiff alleges that he is a retired law enforcement officer living in Gassaway, West Virginia. Compl. ¶ 10. Plaintiff alleges that Defendant operates a website, whitepages.com, that has, without his written permission, "disclosed, redisclosed, or otherwise made available" Plaintiff's home address and phone number. Compl. ¶¶ 12, 18, 20. That is the entirety of the facts purportedly supporting a cause of action under West Virginia law. Based upon these two allegations, Plaintiff asserts a cause of action on behalf of himself and all others similarly situated under West Virginia Code § 5A-8-24, known as Daniel's Law.

      Daniel's Law is a relatively new statute developed in the wake of tragedy. After a disgruntled lawyer went to a federal judge's home in New Jersey and shot and killed her son, the

New Jersey Legislature passed the nation's first version of Daniel's Law with the goal of protecting the safety of certain government officials.  In 2021, the West Virginia Legislature passed its own version of Daniel's Law, which differs in significant ways from New Jersey's statute.  As currently written, unless written permission is first obtained from the individual, West Virginia's version of Daniel's Law prohibits "a person, business, or association" from "disclos[ing], redisclos[ing], or otherwise mak[ing] available the home address or unpublished home or personal telephone number" of certain active or retired government officials "under circumstances in which a reasonable person would believe that providing such information would expose another to harassment or risk of harm to life or property." W. Va. Code § 5A-8-24(e).  The statute provides no guidance to persons, businesses, or associations to recognize under what circumstances a reasonable person would believe providing an address or phone number would expose another to harassment or risk of harm to life or property.  The statute broadly defines "disclose" to mean "to publish, publicly display, distribute, deliver, circulate, post, lend, provide, advertise, or disseminate by any means including, but not limited to, electronic transmission and on any medium including, but not limited to, the Internet."  W. Va. Code § 5A-8-24(c)(1). This expansive definition is further broadened by the inclusion of the undefined phrase "otherwise make available." W. Va. Code § 5A-8-24(d).

Daniel's Law does not require covered persons to notify the persons, businesses, or associations of their active or retired status.  Daniel's Law does not require covered persons to notify the persons, businesses, or associations of their desire to be unlisted.  Daniel's Law thus does not give persons, businesses, or associations the opportunity to remove or redact the information.  Instead, Daniel's Law imposes liability upon unknowing persons, businesses, and associations for any disclosure of covered persons' addresses and phone numbers if the disclosure

is made "under circumstances in which a reasonable person would believe that providing such information would expose another to harassment or risk of harm to life or property."

Daniel's Law provides a private right of action to any covered person for any violation of subsection (e), and the Court may award "(A) Actual damages, *but not less than* $1,000, for each violation of this act; (B) Punitive damages, if applicable, in accordance with §55-7-29 of this code; (C) Reasonable attorney's fees and other litigation costs reasonably incurred; and (D) Any other preliminary or equitable relief as the court deems appropriate." W. Va. Code § 5A-8-24(e)(1)-(2) (emphasis added).  In the event a covered person notifies a person, business, or association of a violation of the statute and requests, in writing, that their information be removed, the person, business, or association may be subject to additional civil penalties if they fail to comply "immediately" and to criminal penalties if they "willfully refuse[] to remove information within 24 hours …." W. Va. Code § 5A-8-24(f)-(h).[1]

While Daniel's Law imposes ambiguous, broad-reaching requirements on persons, businesses, and associations, the statute imposes a lesser standard on governmental entities.  "[A] state or local government agency shall not *knowingly* disclose, redisclose, or otherwise make available the home address or unpublished home or personal telephone number . . ." W. Va. Code § 5A-8-24(d) (emphasis added).  The statute contains no enforcement mechanism, neither civil nor criminal, neither at law nor in equity, for a governmental entity's knowing violation.  So, while a governmental entity may disclose a covered person's address, *see* Braxton County Sheriff's Tax Office Property Tax Search, attached hereto as **Exhibit 1**, a "person, business, or association" is subject to civil—and potentially criminal—liability for the same action.  This disparity exists

---

[1] Plaintiff does not allege he provided a written request to Defendant to remove his information.

despite, as Plaintiff alleges, the fact that a person, business, or association may have obtained the information from governmental entities' public records.  Compl.  ¶ 16.

Daniel's Law is a content-based speech restriction subject to strict scrutiny.  It is not narrowly tailored to the state interest it is designed to serve.  Daniel's Law is also unconstitutionally vague.  It does not provide sufficient notice of the actions it prohibits, and it invites arbitrary enforcement.  As a result, the statute should be invalidated, and Plaintiff's Complaint should be dismissed, with prejudice.

Additionally, to the extent Daniel's Law is deemed to satisfy strict scrutiny and is not otherwise deemed unconstitutional, Plaintiff has failed to state a claim upon which relief may be granted.  Plaintiff has not pleaded that circumstances existed that would lead a reasonable person to believe that providing Plaintiff's information would expose him or any other covered person to harassment or a risk of harm to life or property.  Therefore, Plaintiff's Complaint should be dismissed, with prejudice.

## ARGUMENT

### I.      Daniel's Law Is A Facially Unconstitutional Restriction On Speech.

"The First Amendment,[2] applicable to the States through the Fourteenth Amendment, prohibits laws that abridge the freedom of speech." *Nat'l Inst. of Fam. & Life Advocs. v. Becerra*, 585 U.S. 755, 766 (2018).  The Supreme Court of the United States has held that "the creation and

---

[2] Article III, Section 7 of the Constitution of West Virginia provides, "No law abridging the freedom of speech, or of the press, shall be passed; but the legislature may by suitable penalties, restrain the publication or sale of obscene books, papers, or pictures, and provide for the punishment of libel, and defamation of character, and for the recovery, in civil actions, by the aggrieved party, of suitable damages for such libel, or defamation." The Supreme Court of Appeals of West Virginia has stated that Article III, Section 7 of the West Virginia Constitution is "virtually identical" to the First Amendment of the United States Constitution "in pertinent parts." *Yurish v. Sinclair Broad. Grp., Inc.*, 246 W. Va. 91, 97-98, 866 S.E.2d 156, 162-63 (2021) (citations omitted). Accordingly, "the decisions of the United States Supreme Court interpreting the First Amendment are binding on this Court . . ." *Id.* (citations omitted).

dissemination of information are speech within the meaning of the First Amendment." *Sorrell v. IMS Health Inc.*, 564 U.S. 552, 570 (2011) (citing *Bartnicki v. Vopper*, 532 U.S. 514, 527 (2001) ("[I]f the acts of 'disclosing' and 'publishing' information do not constitute speech, it is hard to imagine what does fall within that category, as distinct from the category of expressive conduct.") (some internal quotation marks omitted)) (also citing *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 481, 115 S. Ct. 1585, 131 L. Ed. 2d 532 (1995) ("information on beer labels" is speech)) (also citing *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759, 105 S. Ct. 2939, 86 L. Ed. 2d 593 (1985) (plurality opinion) (credit report is "speech")).

Very few categories of speech "lie outside the bounds of the First Amendment's protection." *Counterman v. Colorado*, 600 U.S. 66, 72 (2023).  None of those narrow categories— "incitement," "defamation," "obscenity," and "true threats"—is at issue here. *Id.* at 73–74.  Rather, Daniel's Law restricts the "dissemination of information"—i.e., address and phone number information—which under settled law constitutes "speech within the meaning of the First Amendment." *Sorrell*, 564 U.S. at 570.  Although Daniel's Law was intended to serve the state's interest in enhancing the safety of covered persons, it is not sufficiently tailored to advancing that purpose, as required by the Constitution, and is unconstitutionally vague in critical respects.

### A.    Daniel's Law Is A Content-Based Speech Restriction Subject To Strict Scrutiny.

Content-based restrictions on speech are "presumptively unconstitutional." *Reed v. Town of Gilbert*, 576 U.S. 155, 163 (2015).  In general, such restrictions can overcome the presumption of unconstitutionality only by satisfying "strict scrutiny," which requires the government to prove that its speech regulation is "'necessary to serve a compelling state interest' and 'narrowly drawn to achieve that end.'" *Fusaro v. Cogan*, 930 F.3d 241, 248 (4th Cir. 2019) (quoting *Simon & Schuster, Inc. v. Members of N.Y. State Crime Victims Bd.*, 502 U.S. 105, 118, 112 S. Ct. 501, 116

L. Ed. 2d 476 (1991)).  This is a "daunting burden."  *Schrader v. Dist. Att'y of York Cnty.*, 74 F.4th 120, 127 (3d Cir. 2023).  It is thus "rare that a regulation restricting speech because of its content will ever be permissible." *Brown v. Entm't. Merchs. Ass'n*, 564 U.S. 786, 799 (2011) (citation omitted).

Content-based restrictions are those "that target speech based on its communicative content." *Reed*, 576 U.S. at 163.  Any law that is "targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter." *Id.* at 169. Laws that impose "'restraints on the way in which [certain] information might be used' or disseminated'" are prime examples of content-based restrictions. *Sorrell*, 564 U.S. at 568 (citation omitted).  The Ninth Circuit, for example, recently held that a California state law restricting the "dissemination" of "'date of birth or age information'" was a content-based restriction. *IMDb.com v. Becerra*, 962 F.3d 1111, 1120 (9th Cir. 2020) (quoting Cal. Civ. Code § 1798.83.5(b)).

Daniel's Law is plainly a content-based restriction.  By prohibiting persons from "disclos[ing]" or "mak[ing] available" a certain type of information—i.e, "the home address or unpublished home or personal telephone number" of any covered person, W. Va. Code § 5A-8-24(e)—the statute restricts speech based on its communicative content.  In other words, the statute "asks what a person said" and, depending on the answer, either allows or prohibits the speech. *Reed*, 576 U.S. at 169.  That is the hallmark of a content-based restriction. *Id.*

Other courts have concluded that statutes designed to restrict dissemination of personal information of government officials are content-based speech restrictions.  In *Brayshaw v. City of Tallahassee*, 709 F. Supp. 2d 1244 (N.D. Fla. 2010), for example, the district court concluded that a state law prohibiting the malicious "publish[ing] or disseminat[ion]" of "the residence address or telephone number of any law enforcement officer" was "clearly content-based, as it restricts

speech based [on] its subject." *Id.* at 1249–50.  Likewise, in *Sheehan v. Gregoire*, 272 F. Supp. 2d 1135 (W.D. Wash. 2003), the district court found that a prohibition on maliciously disseminating the personal information of law enforcement or court personnel was content-based because it regulated speech "based solely on the subjects addressed by that speech—whether the information identifies law enforcement-related, corrections officer-related, or court-related employees." *Id.* at 1146.  In *Publius v. Boyer-Vine*, 237 F. Supp. 3d 997 (E.D. Cal. 2017), the district court found that a statute allowing certain government officials to demand takedowns of their home address or phone number was "content-based on its face" because "it applies only to speech that contains certain content—the 'home address or telephone number of any elected or appointed [California] official.'" *Id.* at 1012–13 (citations omitted).

In addition to being content-based, Daniel's Law incorporates speaker-based restrictions. "[S]peaker-based restrictions combined with content-based restrictions are frequently deemed to be constitutionally suspect." *Fusaro v. Cogan*, 930 F.3d 241, 252 (4th Cir. 2019) (citing *Reed v. Town of Gilbert*, 576 U.S. at 170 (emphasizing that "laws favoring some speakers over others demand strict scrutiny when the legislature's speaker preference reflects a content preference.")). "In the realm of private speech or expression, government regulation may not favor one speaker over another," and "[d]iscrimination against speech because of its message is presumed to be unconstitutional." *Rosenberger v. Rector and Visitors of University of Virginia*, 515 U.S. 819, 828 (1995) (citations omitted).  Therefore, "the government offends the First Amendment when it imposes financial burdens on certain speakers based on the content of their expression." *Id.* Daniel's Law disparately favors "state or local government agenc[ies]" over private "person[s], business[es], or association[s]." The statute only prohibits disclosures "knowingly" made by governmental bodies, W. Va. Code § 5A-8-24(d), but prohibits ___***all***___ disclosures made by private

persons and entities.  W. Va. Code § 5A-8-24(e).  Additionally, *no* enforcement mechanisms apply

to governmental bodies.  A civil action may be maintained "for violation of subsection (e)" only.

W. Va. Code § 5A-8-24(e)(1).  Requests for removal may only be made to private persons or

entities "in violation of subsection (e)," *not* to governmental bodies.  W. Va. Code § 5A-8-24(f)-

(g).  Violations of those notification provisions, which are only applicable to private persons and

entities, may be civilly or criminally prosecuted.  W. Va. Code § 5A-8-24(h).  These speaker-based

burdens exacerbate the content-based restrictions and require strict scrutiny.

A narrow exception to the general rule described above has traditionally been applied to

what the Supreme Court has referred to as "commercial speech." *See Cent. Hudson Gas & Elec.*

*Corp. v. Pub. Serv. Comm'n of New York*, 447 U.S. 557, 563 (1980).   Commercial speech refers

to "speech that does no more than propose a commercial transaction." *Harris v. Quinn*, 573 U.S.

616, 648 (2014).  The speech restricted by Daniel's Law does *not* propose a commercial transaction

at all. While Defendant may have an "economic motivation" in the restricted speech, such

motivation is "clearly [] insufficient by itself to turn [the speech] into commercial speech." *Bolger*

*v. Youngs Drug Prods. Corp.*, 463 U.S. 60, 67 (1983).  Indeed, courts routinely hold that address

and phone number information, even when disseminated by a for-profit business, constitutes non-

commercial speech. *See, e.g., Vrdolyak v. Avvo, Inc.*, 206 F. Supp. 3d 1384, 1386, 1389 (N.D. Ill.

2016) (attorney profile website containing address and phone number information is non-

commercial speech); *Dex Media W., Inc. v. City of Seattle*, 696 F.3d 952, 962 (9th Cir. 2012)

(phone numbers and community information in telephone directory constitute non-commercial

speech); *IMDb.com*, 962 F.3d at 1122 (online database containing age and date of birth information

was "encyclopedic, not transactional," and therefore not commercial speech).  Because Daniel's

Law is a content-based restriction on non-commercial speech, it must be analyzed under strict scrutiny.

### B.      Daniel's Law Cannot Satisfy Strict Scrutiny.

Under strict scrutiny, a content-based restriction must "further[] a compelling interest." *Reed*, 576 U.S. at 171 (citation omitted).  Daniel's Law was enacted to "enhance the safety and security of certain public officials in the justice system, including judicial officers, prosecutors, federal and state public defenders, federal and state assistant public defenders, and law-enforcement officers … and the immediate family members of these individuals," in an effort "to foster the ability of these public servants who perform critical roles in the justice system, and to carry out their official duties without fear of personal reprisal from affected individuals related to the performance of their public functions." W. Va. Code § 5A-8-24(b).  However, even assuming this interest is compelling, strict scrutiny demands that the means chosen by the legislature must be "narrowly tailored" to achieve this interest.  *Reed*, 576 U.S. at 171.  This means the "State must specifically identify an actual problem in need of solving … and the curtailment of free speech must be actually necessary to the solution."  *Brown v. Entm't Merch. Ass'n*, 564 U.S. 786, 799 (2011).  To be narrowly drawn, a restriction may not be overinclusive, prohibiting too much speech, or underinclusive, restricting too little speech to meet its goal.  *City of Ladue v. Gilleo*, 512 U.S. 43, 50–51 (1994).  "Underinclusiveness raises serious doubts about whether the government is . . . pursuing the interest it invokes, rather than disfavoring a particular speaker or viewpoint." *Entm't Merch. Ass'n*, 564 U.S. at 802.

Multiple district courts across the country have found statutes restricting disclosure of government officials' personal information to be unconstitutional due to tailoring deficiencies.  *See Publius*, 237 F. Supp. 3d at 1019 (granting preliminary injunction to block enforcement of statute

allowing government officials to request removal of address or phone number information because, even assuming state had compelling interest in protecting officials' safety, "the statute is not narrowly tailored to further that interest"); *Brayshaw*, 709 F. Supp. 2d at 1247, 1249 (concluding that a state law prohibiting the "publish[ing] or disseminat[ion]" of "the residence address or telephone number of any law enforcement officer" was unconstitutional because it was not "narrowly tailored" to serve "the state interest of protecting police officers from harm"); *Sheehan*, 272 F. Supp. 2d at 1139, 1146 (finding law prohibiting any "person or organization" to "sell, trade, give, publish, distribute, or otherwise release" address or phone number information of members of law enforcement and certain other public officials was not "narrowly tailored").

Daniel's Law similarly fails because it restricts substantially more speech than necessary to achieve its goal of enhancing the safety of public officials.  As explained below, the statute is both substantially overinclusive and underinclusive, and disregards "available, effective alternatives" that curtail far less speech and that the legislature could have enacted instead. *Ashcroft v. ACLU*, 542 U.S. 656, 666, 124 S. Ct. 2783, 159 L. Ed. 2d 690 (2004).

### C.   The Definition Of "Disclose" Restricts More Speech Than Is Necessary.

The challenges with Daniel's Law begin with its sweeping definition of "disclose." The term "disclose" is given an exceedingly broad scope that, on its face, encompasses many uses of address or phone number information that have no apparent connection to the safety concerns motivating the statute.  The term is defined to mean "to publish, publicly display, distribute, deliver, circulate, post, lend, provide, advertise, or disseminate by any means including, but not limited to, electronic transmission and on any medium including, but not limited to, the Internet." W. Va. Code § 5A-8-24(c)(1).  Nothing in the statute limits the prohibition to disclosures to the public, as opposed to purely private disclosures to other businesses or within a business.  There is

**_no_** limitation at all.  The statute prohibits even *private* conversations between citizens if there is disclosure "under circumstances in which a reasonable person would believe that providing such information would expose another to harassment or risk of harm to life or property."  W. Va. Code § 5A-8-24(e).  Although the statute applies to all media, it only includes a specific reference to one medium, the Internet.  Notably, all manner of activity occurs over the Internet—including email, messaging, remote access to corporate networks, cloud hosting, business applications, and countless other forms of communication and data processing.

For example, under the broad definition of "disclose," the statute could prohibit a person, business, or association from:

- "distributing" a covered person's address information to another business for use in mail-marketing campaigns—even if the underlying contract disallows use of the information for any other purpose;
- "disseminating" voter addresses to political campaigns or advocacy organizations, even when the applicable terms of use forbid further dissemination;[3]
- "providing" a customer address list to an acquiring company in a merger, even if the acquiring company is simply taking on the target company's information;
- "delivering" a covered person's address or phone number to a vendor—e.g., a shipper used by an online store—even if the vendor needs the information to perform its contract;
- a newspaper "publishing" a covered person's real estate transaction even though the transaction is publicly available in the county clerk's office;
- "electronically transmitting" a covered person's address to a cloud storage service that the business uses to store its customer information;
- merely maintaining an internal database containing a covered person's information that the company's employees can access, insofar as that would be considered "posting" the information;
- "circulating" a covered person's phone number by adding them to a group text message; and
- "providing" a covered person's phone number and address as an emergency contact, even if the covered person is a spouse or parent.

---

[3] By restricting campaigns from using, disclosing, and sharing voter information, the statute infringes on both campaigns' and voters' rights to engage in protected political speech. *See Voter Reference Found., LLC v. Balderas*, 616 F. Supp. 3d 1132, 1261 (D.N.M. 2022) (voter rolls are "the beginning point for much of the speech that is most essential to advance human knowledge and to conduct human affairs" (citation omitted)).

The statute's indiscriminate definition of "disclose" is highly problematic from a constitutional perspective. It is difficult to understand—and the legislature failed to explain—how prohibiting these sorts of "disclosures" would meaningfully and directly advance the state's interest in the safety of public officials. Moreover, the statute goes beyond this definition and prohibits "otherwise mak[ing] available" covered persons' information—adding even greater scope to the statute and correspondingly greater question as to how it advances safety. This "overinclusive" breadth of the statute violates the First Amendment. *Brayshaw*, 709 F. Supp. 2d at 1249–50 (finding statute restricting disclosure of law enforcement information "overinclusive in proscribing speech that is not a true threat"); *see generally Simon & Schuster, Inc. v. Members of New York State Crime Victims Bd.*, 502 U.S. 105, 120–21 (1991) (declaring statute "significantly overinclusive" because statute's definition of "person convicted of crime" included a range of behavior implicating "little if any [state] interest"); *Carey v. Wolnitzek*, 614 F.3d 189, 205 (6th Cir. 2010) (finding narrow-tailoring problem where statute's definition of "solicitation" encompassed "methods of solicitation" that "present little or no risk" to the purported state interest).

The statute's tailoring deficiencies continue with its seemingly categorical prohibition on disclosing a covered person's home address or phone number—even when the disclosure does not include any information linking the address or phone number to the covered person. *See* W. Va. Code § 5A-8-24(e) (imposing restriction on any "disclosure" of "the home address or unpublished home or personal telephone number of any covered person"). This would appear to imply, for example, that Google must remove all covered individuals' addresses from Google Maps, even though the addresses would not appear in any way that link them to the covered persons. Courts routinely find speech restrictions unconstitutional when they encompass behavior that has no

significant nexus to the state's purported interest.  *See Brown*, 564 U.S. at 804; *ACLU*, 322 F.3d at 267–68.

### D.    The Lack Of A Notification Process Restricts More Speech Than Necessary.

The statute's tailoring problems are exacerbated by the lack of any required process to notify a person, business, or association of a covered person's desire to have their information removed from a "disclosure." While the statute *permits* covered persons to notify a person, business, or association, notification is not required, W. Va. Code § 5A-8-24(h), and civil liability attaches even absent notification.  W. Va. Code § 5A-8-24(e).  If notification occurs, additional remedies are available to the covered person, and the person, business, or association is subject to criminal liability for "willful[]" refusals to remove the information "within 24 hours of receipt of the written request . . ." W. Va. Code § 5A-8-24(h)(3).

The statute imposes civil liability upon a person, business, or association regardless of whether they had knowledge of a covered person's status.  As a result, the only true method of compliance is to refrain from the speech entirely for fear that information gleaned from a public record may run afoul of Daniel's Law.  This chilling effect on speech is precisely the basis for First Amendment protections.  *See Ams. for Prosperity*, 594 U.S. at 609 ("Narrow tailoring is crucial where First Amendment activity is chilled—even if indirectly—'[b]ecause First Amendment freedoms need breathing space to survive.'") (quoting *NAACP v. Button*, 371 U.S. 415, 433 (1963)).

### E.    The Lack Of A Verification Process Restricts More Speech Than Necessary.

The statute's tailoring concerns and chilling effects are further exacerbated by the lack of any process to verify whether a purported covered person is indeed a covered person who is entitled

to the statute's protections.  Absent such a process, the statute contains no means to ensure that its protections—and the concomitant restrictions on speech—are reserved for those individuals whom the statute was intended to protect.  Daniel's Law does not include a verification process.  Instead, a person, business, or association is required to comply with the statute even without notification, as discussed above.  In the event a notification is made, compliance is mandatory within 24 hours to avoid potential criminal penalties.  Thus, verification is not only not required, but actually *discouraged* by the statute's arbitrary 24-hour compliance deadline.

The lack of a verification requirement, coupled with the lack of a notification requirement, disrupts the statute's purpose and chills speech.  Defendant and all other persons, businesses, and associations have no choice but to quickly comply with any requests received, regardless of validity, or risk civil, and potentially criminal, liability.  That chills far more speech than is necessary to achieve the state's interest in enhancing the safety of public officials.  *See Publius*, 237 F. Supp. 3d at 1019 (statute allowing government officials to request takedown of address or phone number information was not narrowly tailored because it did "not require that the threat be credible or that a third-party review whether the official's request is well-founded" (internal citations omitted)).

F.      **Daniel's Law Is Simultaneously Underinclusive And Does Not Restrict Sufficient Speech To Materially Advance The State's Safety Interests.**

Daniel's Law fails constitutional scrutiny for another reason.  Not only does the law capture too much speech, but it also captures too little *material* speech.  The statute allows many entities, including public agencies, to continue publishing information that it punishes others for providing. These contradictions and loopholes in the statute's coverage imply that, as currently constructed, Daniel's Law is not effectively designed to reduce danger to public officials.

As the Supreme Court has noted, the "[u]nderinclusiveness" of a speech restriction is evidence "that a law does not actually advance a compelling interest." *Williams-Yulee v. Fla. Bar*, 575 U.S. 433, 449 (2015); *see Yim v. City of Seattle*, 63 F.4th 783, 795 (9th Cir. 2023) ("[A] statute cannot meaningfully advance the government's stated interests if it contains exceptions that 'undermine and counteract those goals'" (citation omitted)).  Based on this principle, the Supreme Court in *Smith v. Daily Mail Publishing Company*, 443 U.S. 97 (1979), struck down a statute prohibiting newspapers from releasing the names of juvenile defendants because it did not extend to electronic media.  *Id.* at 104-05.  In light of the glaring gaps in the statute's coverage, the Court concluded that the law "did not advance its stated purpose of protecting youth privacy." *Williams-Yulee*, 575 U.S. at 449 (summarizing *Daily Mail Publ'g*).

Daniel's Law suffers from similar underinclusiveness concerns.  First, the statute requires a person, business, or association to comply with its provisions regardless of whether the covered information will remain readily available in public records.  Second, Daniel's Law contains no notification or verification process for removal of covered information from public records so the information remains publicly available. Third, the statute has no notification or verification requirement prior to pursuing civil penalties against a person, business, or association for disclosing the information, which was more than likely gathered from public records.  Indeed, the name and address of Plaintiff can readily be found online through name-based searches of public property tax records.  *See* **Ex. 1**.

Because many businesses obtain information about individuals' names, addresses, and phone numbers from West Virginia public agencies, the law is self-defeating. The standard imposed on state and local government contains a "knowingly" *mens rea* qualifier and contains no enforcement mechanism against a governmental body. Daniel's Law also contains a catch-all

exception: "This section does not prohibit disclosures required by state or federal law." W. Va. Code § 5A-8-24(i).  As shown in **Exhibit 1**, the county sheriff's tax office maintains an online public database of property tax tickets searchable by name. *See* **Ex. 1**.  The county assessor's office, with the assistance of outside entities, maintains mapping systems that show property details and contain address information.  *See* ARC/GIS Mapping, attached hereto as **Exhibit 2**. County clerks are required to maintain numerous public records, including deeds (W. Va. Code § 37-11-2; W. Va. Code § 39-1-2a), deeds of trusts (W. Va. Code § 39-1-2b), mortgages (W. Va. Code § 39-1-2b), voter registration records (W. Va. Code § 3-2-30), UCC filings (W. Va. Code § 46-9-501, *et seq.*), judgment liens (W. Va. Code § 38-3-5), mechanic's liens (W. Va. Code § 38-2-2; W. Va. Code § 38-2-8; W. Va. Code § 38-2-27), federal liens (W. Va. Code § 38-10A-4), estate filings (W. Va. Code § 41-5-1; W. Va. Code § 41-5-2; W. Va. Code § 44-13-4), appraisements (W. Va. Code § 44-1-14), plats (W. Va. Code § 39-1-11), and assignments (W. Va. Code § 38-12-4).  And those are only some of the public records required to be maintained by county clerks and publicly available at local courthouses.[4]

The underinclusiveness contributes to the unconstitutionality of the statute.  The Supreme Court has recognized that "privacy interests fade once information already appears on the public record and that making public records generally available to the media while allowing their publication to be punished if offensive would invite 'self-censorship and very likely lead to the suppression of many items that . . . should be made available to the public.'" *Fla. Star v. B.J.F.*,

---

[4] Within SB470, the Legislature amended West Virginia Code §§ 5A-8-21 and 22 to include provisions stating that the release of already-confidential and already-FOIA-exempt personal information of state employees, retirees, and their legal dependents is an "unreasonable invasion of privacy." W. Va. Code §§ 5A-8-21(a) and 22(a). These provisions apply to all state employees, not only persons covered under Daniel's Law, but do not apply to federal, local, or county employees (certain of whom are covered persons under Daniel's Law), and do not apply to information maintained by local or county entities, which maintain and publish significant amounts of covered information.

491 U.S. 524, 532 n.7 (1989); *accord Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 494-95 (1975) (internal citation omitted). "[W]here the government has made certain information publicly available, it is highly anomalous to sanction persons other than the source of its release." *Florida Star*, 491 U.S. at 535; *see also Am. Ass'n of Political Consultants, Inc. v. FCC*, 923 F.3d 159, 167-68 (4th Cir. 2019) (finding exemption to application of Telephone Consumer Protection Act for collection of debt backed by federal government "fatally underinclusive" because it "subverts the privacy protections underlying the ban"); *Ostergren v. Cuccinelli*, 615 F.3d 263, 286–87 (4th Cir. 2010) ("We cannot conclude that prohibiting [the defendant] from posting public records online would be narrowly tailored to protecting individual privacy when Virginia currently makes those same records available . . ."); *Publius*, 237 F. Supp. 3d at 1020–21 (finding statute underinclusive insofar as it proscribed dissemination of a covered official's home address and phone number "regardless of the extent to which it is available or disseminated elsewhere"); *Brayshaw*, 709 F. Supp. 2d at 1250 (similar); *Sheehan*, 272 F. Supp. 2d at 1147 (similar).

As listed herein, large categories of information are not subject to Daniel's Law.  Thus, even if all persons, businesses, and associations complied with Daniel's Law, covered individuals' information may still be available through public records, some even in an online searchable format (like the property records containing the individual Plaintiff's information).  Under these circumstances, prohibiting the "dissemination of information which is already publicly available is relatively unlikely to advance the interests in the service of which the State seeks to act." *Fla. Star*, 491 U.S. at 535. Where "the government has failed to police itself in disseminating information," the imposition of a restriction on the dissemination of similar information by private entities "can hardly be said to be a narrowly tailored means of safeguarding" the state's purported interests.  *Schrader*, 74 F.4th at 127 (quoting *Fla. Star*, 491 U.S. at 538); *Sheehan*, 272 F. Supp. 2d

at 1147 (finding that, having "inject[ed] personal identifying information into the public domain," the government "cannot credibly take the contradictory position" that other dissemination "offends a compelling state interest"). Accordingly, the underinclusiveness of Daniel's Law undermines any argument that the statute materially advances the state's purported interest, as required under the First Amendment.

G.     There Are Less Restrictive Alternatives To Achieve The State Interest.

The lack of tailoring in Daniel's Law is particularly "unacceptable" because the Legislature ignored "less restrictive alternatives [that] would be at least as effective" in advancing its interest in enhancing public officials' safety. *Reno v. Am. Civ. Liberties Union*, 521 U.S. 844, 845–46 (1997). That is anathema to the First Amendment. "If a less restrictive alternative would serve the Government's purpose, the legislature must use that alternative." *United States v. Playboy Entm't. Grp., Inc.*, 529 U.S. 803, 813 (2000) (emphasis added) (citation omitted).

The West Virginia Legislature had, and continues to have, ample reasonable options to craft a more narrowly tailored statute aimed at enhancing the safety of covered persons. Perhaps most saliently, it could enact a far more targeted prohibition than one that encompasses every type of "disclosure" imaginable, even where there has been no actual publication of the information at all. Further, the Legislature could include a mandatory notification provision and verification requirements for non-disclosure notices to ensure that the individual is in fact a covered person and wishes to have their information removed. *See, e.g.,* Cal. Gov't Code § 7928.215(c) (requiring non-disclosure demand to "include a statement describing a threat or fear for the safety" of the requesting official). The Legislature could also include penalty provisions, if at all, that are based on fault instead of unknowing violations. The Legislature could also address the root cause of the disclosure of this information. As discussed herein, county and local governments are required to

keep numerous public records that are open to public inspection.  As currently written, Daniel's Law excludes those records from its application, W. Va. Code § 5A-8-24(i), but penalizes subsequent disclosure of, redisclosure of, and "otherwise mak[ing] available" those records.  Thus, if a land sale is recorded in a county clerk's office, the statute is inapplicable to the clerk's office, but penalizes a newspaper reporting the land sale for publishing the same information even if it gathered the information from the clerk's office.  Less restrictive alternatives are available to avoid this penal discrepancy.

"When plausible, less restrictive alternative[s] [are] offered to a content-based speech restriction, it is the Government's obligation to prove that the alternative [would] be ineffective to achieve its goals." *Playboy Entm't. Grp.*, 529 U.S. at 816.  This burden has not been met.  The Legislature has not explained why it did not pursue these obvious, less restrictive options.

Ultimately, the "Government's burden is not merely to show that a proposed less restrictive alternative has some flaws; its burden is to show that it is less effective." *Ashcroft v. ACLU*, 542 U.S. 656, 669 (2004) (citation omitted).  In order to do so, the state "would have to show either that substantially less-restrictive alternatives were tried and failed, or that the alternatives were closely examined and ruled out for good reason." *Bruni*, 824 F.3d at 369-70 (reversing district court's dismissal of First Amendment challenge to buffer-zone ordinance where city did not show it considered less restrictive alternatives to achieving its interest). Absent a "meaningful" explanation as to why "alternative measures that burden substantially less speech would fail to achieve the government's interests"—an explanation that common sense suggests the Legislature would never be able to furnish—Daniel's Law fails constitutional scrutiny.  *Id.*

**H.      Daniel's Law Is Unconstitutionally Vague.**

In addition to its other constitutional infirmities, Daniel's Law is also unconstitutionally vague.  The law's provisions leave regulated parties unable to forecast what conduct could be punishable by harsh penalties and invite arbitrary enforcement.

A law is void for vagueness if it fails to provide sufficient notice of the conduct that is prohibited, such that "regulated parties [do not] know what is required of them," or is otherwise susceptible to arbitrary enforcement.  *FCC v. Fox Television Stations, Inc.*, 567 U.S. 239, 253–54 (2012).  Statutes must be written clearly enough to "enable the ordinary citizen to conform his or her conduct to the law," as forcing parties to guess what conduct might be prohibited offends basic notions of fundamental fairness.  *City of Chi. v. Morales*, 527 U.S. 41, 59 (1999).  Requiring that a law provide "clear guidelines" to those responsible for enforcing it "ensure[s] fair and non-discriminatory application of the law[]."  *N.J. Freedom Org. v. City of New Brunswick*, 7 F. Supp. 2d 499, 514–15 (D.N.J. 1997) (quoting *Kreimer v. Bureau of Police for Town of Morristown*, 958 F.2d 1242, 1266 (3d Cir. 1992)).

"When speech is involved," statutes must "rigorous[ly] adher[e]" to these requirements.  *FCC*, 567 U.S. at 253–54.  Vagueness in "content-based" speech regulations "raise[s] special First Amendment concerns because of [the] obvious chilling effect."  *Reno*, 521 U.S. at 845–46.  For this reason, courts apply "a more stringent" vagueness test to laws that restrict speech.  *Franklin v. Navient Inc.*, 534 F. Supp. 3d 341, 347 (D. Del. 2021) (quoting *Vill. of Hoffman Ests. v. Flipside, Hoffman Ests., Inc.*, 455 U.S. 489, 499 (1982)).

Due to the sweeping breadth of its prohibition, Daniel's Law fails to provide sufficient notice of what is prohibited.  As explained above, the statute's definition of "disclose" by itself encompasses a seemingly boundless range of conduct, potentially encompassing any type of

"transfer" of a covered person's home address or phone number.  W. Va. Code § 5A-8-24(c)(1).

Making matters worse, the statutory prohibition does not stop with the term "disclose."  It goes on

to proscribe "otherwise mak[ing] available" a covered person's information—a completely

undefined, open-ended phrase.  W. Va. Code § 5A-8-24(e).  Further confounding its meaning, the

statute prohibits disclosure of, redisclosure of, or "otherwise mak[ing] available" covered

information "under circumstances in which a reasonable person would believe that providing such

information would expose another to harassment or risk of harm to life or property." W. Va. Code

§ 5A-8-24(e).  This supposed limitation is entirely undefined.  Does an individual's status as a

covered person itself create a reasonable belief of exposure to harm?  Or does the individual need

to convey that he or she is under a reasonable suspicion of harm?  Does the disclosing person or

entity need to know of the circumstances or is the covered person's subjective, private belief

sufficient?  The statute contains no requirement of notification or verification, so this implied

limitation without a defined meaning is meaningless.

      The statutory prohibition thus has no obvious limitation and leaves reasonable minds to

predict what conduct might be deemed to be barred by the statute. A person, business, or

association cannot be sure of all the things they need to do, or not do, to avoid potential liability.

For example, is it permissible for a business to maintain a covered person's information in a file

or database kept on a corporate share drive?  The data is "available" to corporate employees in that

circumstance.  Is it permissible for a business to mail a letter or a package to the covered person at

their home address?  Or for Amazon to deliver a package?  Putting the person's name and address

on the envelope or the box could make it "available" to anyone in the mailroom or the warehouse.

What about an employee writing the person's information on a post-it note and leaving it on their

desk?  It is "available" in that circumstance to anyone who walks by.

The poorly drawn terms of the statutory prohibition may cause businesses to refrain from *any* uses of a covered person's address or phone information, well beyond any conduct that the Legislature may have intended to prohibit—such as by purging the covered person's information from their records or refusing to do business with the person at all.  Where a statute's ambiguities cause regulated parties to "steer far wider of the unlawful zone" by curtailing constitutionally protected conduct, it "operates to inhibit the exercise of [those] freedoms."  *Grayned v. City of Rockford*, 408 U.S. 104, 109 (1972) (citations omitted).

The lack of definitional clarity also invites arbitrary enforcement.  Countless businesses collect or use phone number or address information in one way or another, in the form of customer lists, account information, or otherwise, and often need that information to be "available" to various persons—such as employees, vendors, or business partners—as part of their everyday operations.  Unbounded statutory terms mean that litigants have an endless set of businesses they can select as targets for lawsuits without any prior notification, like the suit brought here.  That is precisely the sort of unpredictable enforcement that the void-for-vagueness doctrine exists to prevent.  *See N.J. Freedom Org.*, 7 F. Supp. 2d at 515–16 (invalidating ordinance that would have required permit for any event of a certain size where money was solicited, because its breadth rendered it susceptible to selective enforcement); *cf. Bd. of Airport Comm'rs v. Jews for Jesus, Inc.*, 482 U.S. 569, 576 (1987) (law that potentially captured all speech in airport terminal violated First Amendment because "[t]he opportunity for abuse, especially where a statute has received a virtually open-ended interpretation, is self-evident" (citation omitted)).

Likewise, the requirement that businesses not disclose "*unpublished* home and personal telephone numbers" of covered persons, W. Va. Code § 5A-8-24(e) (emphasis added), provides insufficient notice of the conduct prohibited by the statute.  The statute provides no definition of

what it means for a home or personal telephone number to be "unpublished." And, in this day and age, no standard exists to distinguish "published" telephone numbers from "unpublished" numbers: the terms are an anachronism tied to local telephone directories, which are largely a thing of the past. Accordingly, a person, business, or association subject to penalties under Daniel's Law has no way to determine whether a telephone number is "unpublished"—and therefore subject to the statute—or "published"—and therefore not. This provision is therefore also unconstitutionally vague.

In conclusion, Daniel's Law violates the First Amendment and Article III, Section 7 of the West Virginia Constitution and is unconstitutionally vague. This Court should therefore grant Defendant's Motion and dismiss Plaintiff's Complaint with prejudice.

## II.     Plaintiff Fails To State A Claim Under Daniel's Law.

Pursuant to Rule 8(a) of the Federal Rules of Civil Procedure, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." *See Erickson v. Pardus*, 551 U.S. 89, 93 – 94 (2007). The rule requires the plaintiff to allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the complaint, and the factual allegations must be taken as true and construed in the light most favorable to the plaintiff. *See Randall v. United States*, 30 F.3d 518, 522 (4th Cir. 1994). Consequently, a motion to dismiss should be granted only if, after accepting all well-pleaded allegations contained in the complaint as true, the plaintiff fails to allege enough facts to state a cognizable legal claim that is plausible on its face. *Twombly*, 550 U.S. at 570. "Factual allegations must be enough to raise a right to relief above the speculative level[,]" and if a plaintiff does not "nudge" his claim "across the line from conceivable to

plausible[,]" then the complaint should be dismissed.  *Id.* at 570.  Facts, as opposed to mere conclusions, are required.  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  "Conclusory allegations in a complaint, if they stand alone, are a danger sign that the plaintiff is engaged in a fishing expedition." *Migdal v. Rowe Price-Fleming Int'l Inc.,* 248 F.3d 321, 325 (4th Cir. 2001) (citing *DM Research v. Coll. of Am. Pathologists*, 170 F.3d 53, 55 (1st Cir. 1999)).

Daniel's Law prohibits "a person, business, or association" from "disclos[ing], redisclos[ing], or otherwise mak[ing] available the home address or unpublished home or personal telephone number" of certain active or retired government officials "under circumstances in which a reasonable person would believe that providing such information would expose another to harassment or risk of harm to life or property." W. Va. Code § 5A-8-24(e).  Thus, three elements are necessary to state a claim under Daniel's Law: (1) a disclosure of, redisclosure of, or "otherwise mak[ing] available" a home address or unpublished home or personal phone number; (2) the information disclosed must belong to a covered person; and (3) circumstances must exist under which a reasonable person would believe that providing such information would expose another to harassment or risk of harm to life or property.

Plaintiff has pleaded the first two elements. Plaintiff alleges that he is a retired law enforcement officer, Compl. ¶ 10, and that Defendant disclosed, redisclosed, or otherwise made available his home address and unpublished home or personal telephone number without his written permission.  Compl. ¶¶ 12, 18, 20.  Plaintiff does not, however, plead *facts* that demonstrate that circumstances existed under which a reasonable person would believe that providing such information would expose another to harassment or risk of harm to life or property.  Rather,

Plaintiff relies upon a singular conclusory statement that "those personal details *can* be leveraged for nefarious purposes, including by individuals (i.e., criminals, disputants, offenders, etc.) with whom the public servants dealt in the line of their duties." Compl. ¶¶ 21, 38 (emphasis added).

Plaintiff's generalized, speculative, conclusory statement that address and phone number information *can* be used for nefarious purposes is insufficient to state a claim. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft*, 556 U.S. at 678 (citations omitted). Plaintiff's threadbare statement that disclosure *could* lead to exposure of harm is not a substitute for factual allegations that would lead a reasonable person to believe that disclosure would expose Plaintiff to harm. Plaintiff also does not plead any facts that would establish that Defendant had knowledge of any potential exposure to harm. Without sufficient factual allegations, Plaintiff cannot maintain a claim under Daniel's Law.

**WHEREFORE**, Defendant Whitepages, Inc., respectfully requests that this Honorable Court grant Defendant's Motion and dismiss Plaintiff's Complaint with prejudice. Defendant requests all other and further relief this Honorable Court deems just and proper.

**WHITEPAGES, INC.,**
**By Counsel,**

s/ *Natalie C. Schaefer*
Natalie C. Schaefer (WVSB #9103)
Caleb B. David (WVSB #12732)
SHUMAN McCUSKEY SLICER PLLC
1411 Virginia Street East, Suite 200
Post Office Box 3953
Charleston, WV 25339-3953
(304) 345-1400; Fax: (304) 343-1826
nschaefer@shumanlaw.com
cdavid@shumanlaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
CLARKSBURG**

**MICHAEL JACKSON, on behalf of himself
and all others similarly situated,**

     **Plaintiff,**

**v.**                             **CIVIL ACTION NO. 1:24-CV-80
Honorable Thomas Kleeh, Judge**

**WHITEPAGES, INC.,**

     **Defendant.**

## CERTIFICATE OF SERVICE

The undersigned, counsel for Defendant, hereby certifies that on this 16th day of September, 2024, the foregoing ***Memorandum of Law in Support of Defendant's Motion to Dismiss*** was filed via the CM/ECF System which will send notification upon the following counsel of record:

Jason E. Causey, Esq. (WVSB #9482)
Bordas & Bordas, PLLC
1358 National Road
Wheeling, WV 26003
(304) 242-8410
jcausey@bordaslaw.com
*Counsel for Plaintiff*

Phillip L. Fraietta, Esq.
Julian C. Diamond, Esq.
Bursor & Fisher, PA
1330 Avenue of the Americas, 32nd Floor
New York, NY 10019
(646) 837-7150
pfraietta@bursor.com
jdiamond@bursor.com
*Counsel for Plaintiff*

                                  *s/ Natalie C. Schaefer*
                                  Natalie C. Schaefer (WVSB #9103)
                                  Caleb B. David (WVSB #12732)